**JEFFREY MANUFACTURING COMPANY, Appellant, v. BOWERS, Tax Commissioner, Appellee.**

The Board of Tax Appeals, Department of Taxation, State of Ohio.

No. 33978.   Decided August 26, 1957.

David Young, Columbus, for appellant.

William Saxbe, Atty. Genl., by Chester H. Hummell, Asst. Atty. Genl., for appellee.

## OPINION

Appellant appeals from a sales tax assessment order made by the tax commissioner on a single item of equipment purchased and claimed to be used by it directly in the manufacture of its product. The order bears date of March 13, 1957. The amount thereof is $129.00 with a penalty of $19.35 contingent upon date of payment.

The cause now comes on for further and final consideration upon the notice of appeal, the commissioner's final order and transcript, the record of a hearing had before this board on July 8, 1957, and briefs of counsel.

The assessee company at Columbus, Ohio, among other things, manufactures sand handling equipment for use in foundries. Its function is to pick up molding sand from hoppers, mix it and transport it eventually into hoppers for use in the making of molds. It then reclaims the sand after use and the cycle is repeated. This equipment is made and sold in units. These units are bulkly and of heavy construction. When set up and in use they operate as a single unit. It is practically impossible to set up these units in the appellant's plant and then move them to the customer's plant due to their size and weight. When sold to a foundry consumer the contract of sale specifies that they, Jeffreys, are to set the units up in the purchaser's plant ready for and capable of immediate operation. All that the consumer does in the process of installation is put in the foundations with anchor bolts for the respective units. As units are manufactured they are loaded uncrated into gondola railroad cars and transported to the foundry. Appellant consigns the goods to itself at purchaser's plant. Along with unit shipments go subassemblies, miscellaneous steel, bolts and nuts, sprockets, shafts, pullies, chain guards, pillow blocks, bearings, chain and various other like items necessary to assemble and join the units into a complete operating unit. Some of these small items are put in containers for ease of handling and to prevent loss. The joinder is made by bolts and nuts and welding. The equipment is unloaded at destination in the consumer's yard.

From this point on appellant found it necessary to have some sort of heavy duty power equipment for loading these units upon wagons to convey them to their places of installation and then to unload them and place them in proper position and hold them so while joinder of the units is made. This necessity caused the purchase of the assessed implement, a Daybrook Wayside Loader, which is a hydraulic jack with a 32-foot boom, capable of lifting 4,000 pounds. It is mounted on a 2-ton Buick truck which is driven from Columbus to the place of installation. Since its purchase it has been so operated on four installation jobs. It performs no other plant function. Appellant, speaking in its brief of the use to which the loader hoist is put, says that "the appellant's activity is limited to the assembly of the parts and components making up equipment ordered by the customer."

The question comes: Is all that is done in the customer's plant simply an assembly job of completely manufactured products, or is it the final step in the manufacturing process of the equipment sold? Although the amount of the assessment is relatively small, the principle involved is of considerable moment to those engaged in the sale and installation of like heavy and cumbersome articles such as large printing presses, stamping outfits, cold storage units and like equipment, which can hardly be fully assembled and thereafter transported, and is only operable when set up as a complete unit.

From the facts shown it appears that the assessed hydraulic jack has two functions—transportation and the placing and holding of units in position until they can be bolted or welded together. Our attention is first drawn to what is said in **Tri-State Asphalt Corp. v. Glander, 152 Oh St 497, 41 O. O. 40.**

"The distinction which this court has logically drawn in reference to transportation instrumentalities is that if such instrumentalities are used solely to transport materials to the point of processing, or to transport them from the place of processing after that has been fully completed, they are not used directly in the production of the processed property, **whereas if such instrumentalities are used solely to transport partially processed materials to another location where the processing is continued or completed by the same processor, they are used directly in the production of the processed property.**"

In the Tri-State case, supra, at page 503, the court makes this comment concerning **France Co. v. Evatt, 143 Oh St 455, 28 O. O. 381.**

"It is true that the property the sales of which were found excepted from taxation in the France case were instrumentalities of transportation which, after stone had been quarried, removed the screened stone to the yards of the processor, but the majority opinion was to the effect that after the transportation of the screened stone something further had to be done to it before it was fully processed for sale. In other words, the material partially processed was transported to another location where further processing was required, and, as a result, the instrumentality of transportation was used directly in the production of tangible personal property for sale by processing."

Although the court deals with processing in both of these cases, we think that what is said and held therein is equally applicable where manufacturing is involved. It will be noted that in both of these cases an interval occurs between the principal processing and completion of the act of processing, by the same processor, at a different location. The board considers that the element of time and distance between the two points, the appellant's factory and the consumer's foundry, is of little or no moment in the present instance. To make its equipment operable it was necessary that Jeffreys do certain work within the consumer's plant. It must join its units together by bolting or welding them in position as a single operating implement before it or they were capable of performing the function for which they were created. To accomplish that end it transported the assessed hoist to the installation site. It also took some of its skilled factory workers to that site. It hired such local labor to assist its employees as the law of the consumer's domicile required. It paid all such costs of labor and material necessary in installation. This was the only way, economically and feasibly possible, for it to complete its contract of sale. It is in effect as if the consumer had said to appellant, "You may use our foundry space as if it were a part of your own factory in which to complete your product sold to us."

It is the judgment of the board of tax appeals that the assessed implement is both directly and primarily used by appellant in its manufacturing process, and is, therefore, not subject to and is exempt from sales taxation. The assessment order made and complained of must be, and is hereby reversed.